IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>OTAGUS DEMOND COVERSON,<br><br>    Defendant. | Case Nos. 3:09-cr-00075-JKS<br>       3:14-cv-00217-JKS<br><br>MEMORANDUM DECISION |

At Docket No. 417, defendant Otagus Demond Coverson filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Coverson concurrently moved for the appointment of counsel. Docket No. 418. This Court, through a previously-assigned district judge, appointed counsel and directed that counsel file an amended § 2255 on Coverson's behalf. Docket No. 419. After a number of extensions were granted, Docket Nos. 422, 426, 428, 431, the Court appointed substitute counsel at Coverson's request, Docket No. 434. Consistent with Court orders, substitute counsel has filed an Amended 28 U.S.C. § 2255 Motion ("Amended § 2255 Motion"; Docket No. 45),[1] the Government has answered the Amended § 2255 Motion

---

[1] As discussed below, the Amended § 2255 Motion is limited to a number of grounds challenging the effectiveness of his trial and appellate counsel. Coverson was represented at trial by Darrel J. Gardner, Esq. He was represented on appeal by Elizabeth Wallace Fleming, Esq.

-1-

("Opposition"; Docket No. 448), and Coverson has filed a counseled Traverse in support of the Amended § 2255 Motion (Docket No. 450). Coverson also moves for certain discovery pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2255 Motions, Docket No. 446, which the Government has opposed, Docket No. 448. This matter is now before the undersigned judge for adjudication.

## I. BACKGROUND/PRIOR PROCEEDINGS

In July 2009, Coverson was charged with one count of attempted possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 8841(a)(1) and (b)(1)(A). Appearing with counsel, Coverson pled guilty pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, in which Coverson would be sentenced to between 262 to and 327 months' imprisonment in exchange for the Government's agreement not to file an Information that would have mandated a sentence of life imprisonment. Docket Nos. 27, 31.

After plea counsel moved to withdraw and was replaced with new counsel ("trial counsel"), Docket Nos. 49, 58, Coverson moved to withdraw his guilty plea as involuntary due to medication he was taking at the time he entered his plea, Docket Nos. 49, 72, 77. The Court granted his motion. Docket No. 100.

After the plea was withdrawn, trial counsel moved to suppress the results of the controlled delivery that led to Coverson's arrest. Docket No. 130, 136. The Court, through a previously-assigned magistrate judge, conducted an evidentiary hearing. Docket No. 172. In its initial report and recommendation that followed, the magistrate judge laid out the following facts underlying the controlled delivery at issue in this case:

> ***A. Investigation***
> On July 9, 2009, authorities in Oregon seized about nine kilograms of cocaine from a vehicle. Based on investigation, law enforcement agents learned that the cocaine was supposed to be delivered to Paul Nagan, who lived in the state of Washington. After a controlled drug delivery, Paul Nagan was arrested. Nagan cooperated with law enforcement, and from Nagan law enforcement learned that the drugs were ultimately intended for a person named "Blaze." Nagan informed them that Blaze had paid him to receive the cocaine and that Nagan was supposed to mail the cocaine to 4318 Vance Drive, Apartment A4 in Anchorage, Alaska. Nagan admitted that he had previously mailed packages of cocaine to "Blaze" at the same address. Law enforcement

-2-

Case 3:14-cv-00217-JKS   Document 2   Filed 05/16/18   Page 2 of 16

determined that "Blaze" was Coverson, through a third party unrelated to Nagan.

Law enforcement then orchestrated a third controlled delivery in order to investigate Coverson's involvement. Law enforcement agents in Anchorage, Alaska created a sham Express Mail Package through the U.S. Postal Service. The package contained nine kilograms of imitation cocaine and a tracking device that allowed the agents to monitor the package. (Doc. 136–2 at 2). The tracking device was placed in the package pursuant to the beeper warrant at issue in this motion, SW 03–09–MJ–00. A beeper warrant authorizes agents to place a tracking device inside the package and monitor when it is opened. When the tracking device signals that the package has been opened, the warrant allows the agents to get the tracking device back from wherever the package has been opened. (Tr. at 58; Doc. 136–2). The agents also created a mailing label. (Tr. at 61). The addressee on the label was Jay Jenkins. It was addressed to the Vance Drive address. (Doc. 136–2 at 9). The return address contained the name of a business in Seattle. (Doc. 136–2 at 9). It was randomly selected by the Postal Inspector. (Tr. at 61). Nagan placed a couple calls to Blaze to confirm mailing instructions and to inform Coverson about the name used as the addressee on the package. (Defense Ex. C). The package was never placed in the mail system since it was actually created by law enforcement agents. Instead, a Postal Inspector hand-delivered the package to Coverson on July 14, 2011. Coverson was in the residence and received the package. About ten minutes later the tracking device indicated the package had been opened. The agents entered the Vance Drive residence. Coverson attempted to flee but was detained. (Doc. 136–3 at 16; Tr. at 19). The package containing sham drugs is the basis for the attempt charge in this case.

### *B. Beeper warrant*

As described above, the agents in this case obtained a beeper warrant to track the sham package, and pursuant to that warrant, they entered the Vance Drive home to retrieve the package from Coverson. The beeper warrant was granted on the basis of an affidavit from Postal Inspector Andrea Avery dated July 13, 2010 and located in the record at Docket 136–2. In that affidavit, Inspector Avery explained that the beeper warrant was going to be placed in an Express Mail package that had been prepared by law enforcement agents in Anchorage, Alaska and that it contained nine kilograms of imitation cocaine. Inspector Avery explained the seizure of nine kilograms of cocaine in Oregon from a vehicle. She explained how that seizure eventually resulted in the arrest of Nagan. She explained that Nagan cooperated with law enforcement and admitted that he was supposed to pick up the nine kilograms of cocaine but said that he was paid $5,000 to do so by a man named "Blaze." Inspector Avery's affidavit said that Nagan told law enforcement he was supposed to ship it to Alaska and that he had mailed drugs up to Alaska two other times. Nagan told law enforcement agents that both packages were sent to the same address but that he needed to call someone to verify the address. After making a phone call he told the agents that the nine kilograms of cocaine were supposed to be mailed to 4318 Vance Drive, # 4A, Anchorage, AK 99508 and that the Vance Drive address was where he mailed the prior two packages.

Inspector Avery's typed affidavit stated that "Blaze" was later identified as Coverson. In a handwritten notation in the margin next to that sentence, Inspector Avery wrote that Nagan identified a photograph of Coverson to be "Blaze." That notation was initialed and dated by Avery. The affidavit went on to say that agents observed Coverson at the 4318 Vance Drive address at Apartment # 4A earlier that day (July 13, 2010).

Inspector Avery also indicated that she reviewed Express Mail labels in order to see if there were in fact prior packages mailed to the Vance Drive address from the Tacoma/Seattle, Washington area. She explained in the affidavit that she found two such labels. One was dated April 14, 2009, weighed about 33 pounds, and was mailed from

-3-

> Seattle. The other package was dated May 27, 2009, weighed about 22 pounds, and was mailed from Tacoma. The labels indicated that both packages were sent to "D. Josey." (Docket 136–2 at pp. 8–9).
>
> This Court granted the request and issued the order. The actual order is located in the record at Docket 136–1. It stated that probable cause existed to believe that Coverson, living at 4318 Vance Drive, Apartment A4, was engaging in drug crimes and that there was probable cause to believe that an electronic alerting device installed in the sham package would assist law enforcement in conducting surveillance of the package and in determining the moment the package is opened. It granted the Postal Inspectors and federal agents authority to install, monitor, utilize, and retrieve the device located within the package on either public or private property.

Docket No. 208 at 2-5.

The Court also granted Coverson a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to allow him to challenge the truthfulness of factual statements in the search warrant affidavit. Docket No. 175 at 51-52. Specifically, the Court ruled from the bench that Coverson had made a substantial preliminary showing which was possibly reckless and material based on the fact that the agent did not include Nagan's lengthy criminal history in the warrant application. The two agents involved in the preparation of the search warrant testified that they did not run a criminal history on Nagan before applying for the warrant. *Id.* at 81, 84-85, 89-90, 93-99, 104-05.

In the initial report and recommendation following the evidentiary and *Franks* hearing, the Court compared Coverson's testimony at the *Franks* hearing with statements he had made to the United States Probation Office following his plea, and found that Coverson had been untruthful when testifying about where he resided. Docket No. 208 at 14. The Court concluded that Coverson did not have the requisite privacy interest to challenge the search of the Vance Drive residence. *Id.*

Before the Court issued a final recommendation, Coverson requested that the evidentiary hearing be reopened so that he could present more evidence as to his privacy interest in the Vance Drive address. Docket No. 232. The request was granted, Docket Nos. 238, 260, and the Government admitted that Coverson established at the continued hearing his residency at the Vance Drive address, Docket No. 263 at 2.

-4-

After considering the parties' objections, the Court issued a final amended report and recommendation finding that, although Coverson had the requisite privacy interest to challenge the search, probable cause existed to issue the beeper warrant. Docket No. 301. The Court additionally determined that the agents' failure to run a search for Nagan's criminal history was "certainly negligence," but was "not enough under *Franks* for this Court to conclude that the warrant must be voided and all fruits of that warrant suppressed." *Id.* at 19. The previously-assigned district judge adopted and accepted the final report and recommendation in its entirety and denied the motion to suppress. Docket No. 311.

In July 2011, Coverson proceeded to a jury trial. Docket Nos. 320, 322, 324. Prior to trial, trial counsel notified the Court that the defense would not be calling Nagan, but wanted to introduce his criminal history into evidence if the Government played any of Nagan's recorded telephone calls to the jury. Docket Nos. 400 at 124-30, 401 at 2-15. The Court denied the motion, but offered to instruct the jury that the telephone calls were being offered for a limited purpose. Docket No. 400 at 131-35. During closing argument, trial counsel argued that Nagan was not credible. Docket No. 402 at 714. After deliberations, the jury found Coverson guilty as charged. Docket No. 328. The Court subsequently sentenced Coverson to life imprisonment without the possibility of parole ("LWOP"). Docket No. 375.

Through counsel, Coverson appealed the judgment, arguing that his LWOP sentence violated the Sixth and Eighth Amendments. Ninth Circuit Court of Appeals Case No. 12-30291, Docket No. 6. The Ninth Circuit unanimously affirmed the judgment, finding that Coverson's arguments were foreclosed by Supreme Court precedent. *United States v. Coverson*, 539 F. App'x 747, 747-48 (9th Cir. 2013).

Coverson filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 dated November 4, 2014.[2] Docket No. 417. Through counsel, he filed the

---

[2] This Court is obligated to give Coverson the benefit of the "mailbox rule" and assume that he "filed" his *pro se* petition on the date he signed it and presumably turned it over to prison authorities. *See Anthony v. Cambra*, 236 F.3d 568, 574-75 (9th Cir. 2000) (citing

-5-

Amended 28 U.S.C. § 2255 Motion on May 2, 2016. Docket No. 445.

## II. GROUNDS/CLAIMS

In the counseled Amended Petition before this Court, Coverson argues that trial counsel should have: 1) called Nagan to testify at the *Franks* hearing; and 2) called Nagan to testify at trial; and that appellate counsel should have challenged: 3) the trial court's ruling that Nagan had a Fifth Amendment right to refuse to answer questions regarding his dealings with Coverson; and 4) the trial court's ruling that probable cause existed to issue the beeper warrant.

## III. STANDARD OF REVIEW

Title 28 U.S.C. § 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." Habeas relief is available to correct errors of jurisdiction and constitutional error but a general "error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

"In determining whether a hearing and findings of fact and conclusions of law are required, '[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief can be granted.'" *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). This Court need not hold an evidentiary hearing if the record conclusively shows that Coverson is either not entitled to relief or if, in light of the record, his claims are "palpably incredible or patently frivolous." *Id.* (citing *Schaflander*); *see United States v. Meija-Mesa*, 153 F.3d 925, 931 (9th Cir. 1998) (same). Indeed, mere conclusory statements or statements that are inherently incredible in a § 2255 motion are insufficient to require a hearing. *See United States*

---

*Houston v. Lack*, 487 U.S. 266, 275 (1988)).

*v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004); *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Under Rule 4(b) of the Rules Governing Section 2255 Proceedings, when a court receives a § 2255 motion, the court must initially screen it, and dismiss it summarily if it plainly appears that the moving party is not entitled to relief. *See United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

IV. DISCUSSION

A. Timeliness

The Government urges the Court to dismiss Coverson's Petition as untimely. A motion pursuant to 28 U.S.C. § 2255 must be filed within one year from the date on which the petitioner's conviction becomes final, unless an exception applies. 28 U.S.C. § 2255(f)(1). In this case, Ninth Circuit affirmed Coverson's judgment on August 22, 2013, and his conviction became final 90 days later on November 20, 2013, when the time in which he could have petitioned for certiorari expired, *see Clay v. United States*, 537 U.S. 522, 532 (2003). Coverson's *pro se* motion for relief was submitted to prison officials for filing on November 4, 2014, Docket 417 at 13, and was thus timely filed.

1. *The Amended § 2255 Motion Does Not Relate Back to the Initial Motion*

The counseled Amended § 2255 Motion, however, was not filed until May 2, 2016, more than two years after Coverson's conviction became final. A habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Rule 15 of the Federal Rules of Civil Procedure permits amendments that "relate[] back to the date of the original pleading." FED. R. CIV. P. 15(c)(1). A pleading relates back when the asserted amendment arises "out of the conduct, transaction, or occurrence set out–or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B); *see Mayle v. Felix*, 545 U.S. 664, 650, 657 (2005) (holding that relation back is appropriate in habeas cases where the claim in the amended petition arises from the same core facts as the timely-filed claims and depends upon events not separate in "both time and type" from the originally raised episodes).

-7-

When asked to "[s]tate the facts supporting each ground," Coverson repeated the following statement for Grounds 1 through 4 in the timely *pro se* motion: "Unable to present a Ground or Claim because I do not have the documents or parts of the record that I requested." No other documents were attached to the submission. Docket No. 417. Under Rule 2 of the Rules Governing § 2255 Proceedings, a motion must specify all grounds available for relief and state the facts supporting each ground. Because the *pro se* motion "contained no factual allegations, no claims, and no requests for relief," the Amended § 2255 Motion cannot relate back to it. *See Lewis v. Nevada*, 692 F. App'x 535 (9th Cir. 2017).[3] "Although a pro se habeas petition is 'given the benefit of liberal construction,' *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010), even 'a liberal interpretation . . . may not supply . . . [a] claim that [was] not initially pled,' *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)."

  2. *Coverson Does Not Show that the Amended § 2255 Motion is Otherwise Timely*

In his Traverse, Coverson argues that the Amended § 2255 Motion is nonetheless timely because the Court appointed counsel, ordered that an amended motion be filed, and subsequently extended the deadline for filing the amended motion numerous times. Docket No. 450 at 2. Coverson notes that the orders would be inconsequential were the Amended § 2255 Motion already untimely, and avers that "this Court permitted the petition to be amended, meaning that counsel would examine the record for issues and 'fill in the blanks.'" *Id.* at 3. But the Ninth Circuit has admonished that courts are not free to disregard § 2255(f)(1)'s one-year statute of limitations.[4] *See United States v. Castro-Verdugo*, 750 F.3d 1065, 1071 (9th Cir. 2014). The

---

[3] Cited for persuasive but non-precedential value. FED. R. APP. P. 32.1.

[4] Coverson also notes that the Government did not raise the timeliness issue at status hearings held prior to the filing of the Amended § 2255 Motion and did not move to dismiss the Amended § 2255 Motion as untimely. The Government raised the statute of limitations defense in its Opposition—its first responsive pleading—and therefore did not waive that issue. *See Day v. McDonough*, 547 U.S. 198, 208-09 (2006). Moreover, the Supreme Court has held, in the context of federal habeas petitions, that a district court may "consider, *sua sponte*, the timeliness" of a petition if the parties are given "fair notice and an opportunity to

-8-

Court was thus without authority to alter the statutory deadline through its routine scheduling orders.

   3.   *Equitable Tolling May Apply Here*

"[A]fter the one-year statute of limitations has passed, [this Court] may consider a § 2255 motion to vacate, set aside, or correct a sentence only if the petitioner establishes eligibility for equitable tolling . . . . " *Id.*; *see also United States v. Buckles*, 647 F.3d 883, 889-90 (9th Cir. 2011). A "§ 2255 movant is entitled to equitable tolling 'only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing.'" *Id.* at 889 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010) in turn quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Coverson contends that equitable tolling is warranted here because he did not have access to his legal records when he prepared the form for his *pro se* § 2255 Motion. Docket No. 450 at 3. The record reflects that, in June 2014, roughly 5 months before his filing deadline, Coverson moved *pro se* for copies of the entire court record, including all discovery and the complete trial transcript. Docket No. 414. This Court, through a previously-assigned district judge, denied the motion without prejudice as premature on October 6, 2014. Docket No. 415. The Court noted that Coverson could still timely file a § 2255 Motion and opined that "[t]he Court record is not necessary to complete the § 2255 form." *Id.* at 1-2. Coverson subsequently indicated in his § 2255 form that he was unable to present any claim because he lacked access to his record. Docket No. 417. He concurrently moved for reconsideration of the Court's order denying his record request. Docket No. 416. In his motion for reconsideration, Coverson averred that he had unsuccessfully asked the prior four attorneys of record to provide him a copy of the record and that he was unable to perfect his ineffective assistance claim without the record. *Id.* at 1-2. The Court appointed counsel, denied the reconsideration motion without prejudice, and noted that the

---

present their positions." *Id.* at 207-09; *see also Shelton v. United States*, 800 F.3d 292, 294 (6th Cir. 2015) (extending *Day* to § 2255 context).

-9-

records request could be renewed by counsel, if necessary. Docket No. 419 at 1-2.

In his Traverse, Coverson states that he did not receive case files until habeas counsel shipped them in October 2015 following a status conference with the Court. Docket Nos. 450 at 3, 437. The record further indicates that, on January 27, 2016, habeas counsel filed with the Court a status report indicating that Coverson had received case files she sent to him and would be providing counsel with a list of proposed issues. Docket No. 438 at 1-2. It therefore appears that Coverson did not have legal files from at least June 2014 to October 2015.

Deprivation of legal materials is the type of external impediment for which the Ninth Circuit has held warrants equitable tolling. *See Lott v. Mueller*, 304 F.3d 918, 924-25 (9th Cir.2002). Moreover, the Ninth Circuit has recognized that "it seems unrealistic to expect [a habeas petitioner] to prepare and file a meaningful petition on his own within the limitations period" without access to his legal file. *Spitsyn v. Moore*, 345 F.3d 796, 801 (2003). Moreover, the record supports that Coverson was reasonably diligent in pursuing his rights. Accordingly, the Court declines to dismiss the Amended § 2255 Motion as untimely.

B.  Merits

Coverson's Amended § 2255 Motion is limited to a number of grounds alleging that trial and appellate counsel rendered ineffective assistance.[5] The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The Court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. The [petitioner] bears the burden of showing 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [petitioner] by the Sixth Amendment.'" *Gonzalez v. Wong*, 667 F.3d 965, 987 (9th

---

[5] Coverson did not raise any of the instant claims on direct appeal. Ineffective assistance of counsel claims, however, "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim[s] on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) (discussing limited circumstances under which an ineffective assistance claim may be cognizable on direct review).

Cir. 2011).

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams v. Taylor*, 529 U.S. 362, 393-95 (2000). Thus, Coverson must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

    1. *Coverson Fails to Establish Prejudice as to Trial Counsel*

Coverson first argues that trial counsel was ineffective for failing to call Nagan to testify at the *Franks* hearing and at trial. According to Coverson, if Nagan had testified at the *Franks* hearing, he may have admitted to mailing one prior drug package, not two, which would have contradicted the statement by Inspector Avery in the beeper warrant affidavit regarding the two prior packages. But Coverson provides no reason to believe that Nagan would have testified inconsistently with what he told agents after he was first arrested. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that a witness would provide favorable testimony on petitioner's behalf is insufficient to establish Strickland prejudice); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Moreover, as the Court previously found, "even if only one prior package of drugs had been mailed to the Vance Drive address, rather than two packages,

-11-

probable cause for the beeper warrant still exists." Docket No. 292 at 22 n.3.

Coverson also alleges that trial counsel should have called Nagan as a witness at trial. But the record reflects that counsel instead chose to attack Nagan's credibility without putting on the stand, which would run the risk of further inculpating Coverson. The jury apparently rejected the attacks on Nagan's credibility; it is far too speculative to conclude that presenting Nagan as a witness would have led the jurors to a different outcome. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (granting habeas relief "on the basis of little more than speculation with slight support" is improper). Accordingly, Coverson cannot establish that he was prejudiced by counsel's failure to call Nagan to testify at either the *Franks* hearing or at trial.

2. *Coverson Fails to Establish Prejudice as to Appellate Counsel*

Coverson additionally contends that appellate counsel should have raised on direct appeal challenges to this Court's rulings that Nagan had a Fifth Amendment right to refuse to answer questions regarding his dealings with Coverson and that probable cause existed to issue the beeper warrant. These claims are premised on a belief that any challenge to the denial of Coverson's motion to suppress would have been successful. But again, Coverson fails to show a reasonable likelihood that such claims would have prevailed on direct appeal and thus fails to demonstrate that he was prejudiced by their omission. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (internal citation omitted)). *Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992)(stating that appellate counsel's failure to raise an issue on appeal does not constitute ineffective assistance of counsel if there was no reasonable likelihood of success in arguing the issue).

Coverson makes no showing that he had a reasonable likelihood of challenging the denial

of his suppression motion on appeal, and, based on the transcript and the record before the Court, the Court discerns none. Appellate counsel's decision to not pursue a losing argument does not equate to ineffective assistance of counsel, and Coverson is not entitled to relief on these grounds either.

C.      Evidentiary Hearing

If the Court finds that petitioner has satisfied his pleading and preliminary evidentiary burden regarding both prongs of the *Strickland* test, and the Government has offered conflicting evidence, "a district court must grant a hearing to determine the validity of a petition brought under section 2255, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). Accordingly, an evidentiary hearing is required if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no relief. *See Howard*, 381 F.3d at 877.[6] Failure to prove one or both of the *Strickland* prongs will result in a denial of a hearing if the petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996).

Coverson has not presented a factual dispute in this case. In light of the record, this Court determines that an evidentiary hearing is unnecessary. *See* 28 U.S.C. § 2255(b) (no evidentiary hearing required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993); *cf. Gonzalez v. Knowles*, 515 F.3d 1006, 1014 (9th Cir. 2008) (holding that claims grounded in speculation unsupported by the existence of any quantum of evidence do not entitle

---

[6] To meet his evidentiary burden, the petitioner may rely on the files and records of the case, including transcripts of the trial and any pre-trial hearings. Where the record does not address the facts upon which he relies, the petitioner may supplement the record by filing affidavits or declarations pursuant to 28 U.S.C. § 1746.

-13-

a § 2254 petitioner to an evidentiary hearing).

D.       Request for Discovery (Docket No. 446)

Petitioner also seeks leave of court to submit requests for production of documents to the United States Attorneys' Office to produce: (1.) All documents relative to the information the Agents' [sic] sought regarding the criminal history of Mr. Nagan and a copy of that criminal history report; (2.) All documents relative when Mr. Nagan's criminal history was requested and when that information was provided to the Anchorage United States Attorney's Office, agents of ICE or the DEA or any other branch of the United States Government; (3.) All documents produced by any law enforcement agency relative to Mr. Nagan's criminal history; and (4.) Any and all other documents garnered from any source relative to Mr. Nagan's criminal history in any state or federal jurisdiction. Docket No. 446.

Under Rule 6(a) of the Rules Governing Section 2255 Proceedings, courts may authorize parties to a Section 2255 habeas proceeding to conduct discovery for good cause shown. Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997); *see also United States v. Finkel*, 165 F. App'x 531, 532 (9th Cir. 2006) (applying *Bracy* in the context of a federal prisoner's § 2255 motion). Habeas petitioners may not "use federal discovery for fishing expeditions to investigate mere speculation," and conclusory allegations are insufficient to establish good cause for discovery under Rule 6. *Calderon v. U.S. Dist. Court*, 98 F.3d 1102, 1106 (9th Cir. 1996).

Coverson asserts that the requested documentation is relevant to certain allegations in the Amended § 2255 Motion, specifically, "that the Government was aware of, and either could have or did have, possession of Mr. Nagan's criminal history prior to filing an application for an anticipatory warrant." *Id.* at 2. However, Coverson has failed to sufficiently articulate how the documents sought specifically relate to his ineffective assistance of counsel claims, and does not

-14-

explain why such broad requests and expansive discovery are necessary. Moreover, as previously discussed, the Court has now thoroughly considered the ineffective assistance claims raised in the Amended § 2255 Motion and determined that habeas relief is not warranted. Coverson makes no showing that additional discovery would alter this conclusion. Notably, the agents who prepared the beeper warrant at issue both testified at oath that neither had run Nagan's criminal history prior to preparing the warrant application. Docket No. 175 at 81, 84-85, 89-90, 93-99, 104-05. Coverson provides no evidence to doubt this testimony and therefore discovery related to this contention appears to be a "fishing expedition[] to investigate mere speculation." *Calderon*, 98 F.3d at 1106. The Court must therefore also deny the motion for discovery at Docket Nos. 446 and 452.

## V. CONCLUSION AND ORDER

Coverson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 at Docket No. 417 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Second Motion for Discovery at Docket Nos. 446 and 452 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to grant a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*

-15-

*v. Cockrell*, 537 U.S. 322, 327 (2003))). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 16, 2018.

/s/ James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
Senior United States District Judge